[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
Defendant-appellant Ernest Sims was found guilty by a jury of kidnapping, attempted murder, four separate counts of rape, and two counts of felonious assault. All of the charges stemmed from a single incident. Sims's testimony concerning what had occurred that evening differed substantially from the testimony of the victim, and to a lesser degree the testimony of witnesses to fragments of the incident. He now appeals the jury's verdict as being unsupported by sufficient evidence, and against the manifest weight of the evidence. We overrule Sims's assignments of error and affirm his conviction.
According to the victim, she had been at a party where she had been smoking crack cocaine, but left at around 2:30 am to purchase cigarettes. She walked for about twenty minutes before finding a store open at that time of the morning, and was ready to start retracing her steps when a red pickup truck approached her. The driver, later identified as Sims, asked her if she "bootlegged" slang for purchasing transportation from an unlicensed taxi at a reduction from regular cab fare. She testified that she agreed to pay the driver two dollars for a ride back to the party and got into the pickup truck.
Once the victim entered the car and Sims began driving, she said that he ignored her requests to turn in the direction of the party, and rapidly accelerated onto an expressway. Despite her increasingly frantic pleas that he let her out of the car or tell her what was going on, Sims simply continued to drive at a high rate of speed until he pulled onto a dark access road. When the car slowed, the victim jumped out of the car and tried to escape, but Sims caught her. He threatened to kill her, punched her repeatedly, tore her clothes off, and forced her into four separate acts involving sexual penetration.
The victim testified that she was able to pull away during the ordeal. She punched Sims and ran toward the expressway. Sims followed her and began to beat her about the head with a tire iron.
At about that time, a couple, returning from delivering the early morning edition of a local paper, drove by. They both testified that they had heard a scream for help and turned their car around to investigate. According to them, they noticed the red pickup truck and saw Sims, without pants, using a tire iron to beat a naked, bloody woman. They yelled at Sims to stop, and backed up to get the license number of the truck. Sims hopped in the truck, backed his truck into their car, turned, and tried to ram their car from the side as the couple accelerated to escape. They called the emergency police number on their cellular phone to report the incident, including the license number of the red pickup truck.
The police responded and transported the victim to University Hospital, where she received care from a trauma team. Members of the team testified that although the victim was hemodynamically stable, she was semiconscious, and her condition required that she be placed in the hospital's Shock/Resuscitation Unit for critically unstable patients. Because of her location and condition, the staff was not able to perform a variety of special rape tests to gather evidence, but was limited to a visual inspection during which no trauma to the victim's genital area was noted.
The police were also dispatched to the address of the registered owner of the pickup truck. The truck was registered to Sims's brother, who cooperated with the police, established his own alibi for the early morning hours during which the incident had occurred, and referred them to Sims.
The police located Sims and brought him to the station for questioning. Initially, Sims seemed to deny any knowledge of the incident. But Sims had left the location of the incident with such haste he had neglected to collect several items of clothing, including his shorts. In the pocket of his shorts was a receipt that ultimately identified Sims as the owner of the shorts. In addition, both the victim and the woman in the car independently identified Sims picture from an array of photographs. And so, Sims's original denial of his culpability changed somewhat at trial.
According to Sims's testimony, the victim had actually approached his car, offering sex for money. He claimed that they reached an agreement regarding price, and that the victim voluntarily entered the truck. When they reached a private location, the victim took off all of her clothes and began performing oral sex on him, but was interrupted by a passing motorist. Sims testified that he went to investigate, and that when he returned, the victim demanded more money to continue, and became enraged when he told her that he had no more money. Sims claimed that the victim then attacked him with a tire iron, and that he may have bumped her head with it when he took it away from her.
The jury found Sims guilty of kidnapping,[1] attempted murder,[2]
four counts of rape,[3] and two counts of felonious assault.[4] Sims now appeals, raising as a single assignment of error that the jury's decision was unsupported by sufficient evidence, and was also against the manifest weight of the evidence. Because the appellate standard of review for each argument is different, we treat Sims's single assignment of error as two separate assignments, but overrule both.
"The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different."[5] A challenge that the evidence introduced at trial was insufficient to support Sims's conviction requires that we determine "whether any rational factfinder, after reviewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt."[6]
Sims does not elaborate on the bare allegation that the evidence was insufficient for the jury to have found him guilty. Because the testimony of the victim and the witnesses support the verdict on each count, we cannot independently conjecture an argument to support this assignment of error. We therefore overrule Sims's first assignment of error.
By contrast, a challenge that the jury's verdict was against the manifest weight of the evidence requires that we unanimously disagree with the factfinder's resolution of conflicting, credible testimony.[7]
Thus we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice.[8]
Under this assignment of error, Sims's argument is straightforward, but brief. He claims that because the victim had admitted to smoking crack cocaine earlier in the day, the jury should have discounted her testimony. Sims further argues that since both the victim's and Sims's testimony regarding what had occurred were equally probable, the jury was required to have construed the evidence in Sims's favor. Because the two conflicting versions of the incident were not in fact equally probable, and because the jury was entitled to have believed the victim's testimony rather than Sims's testimony, we affirm the jury's verdict.
First, the victim's admission that she had smoked crack cocaine earlier in the evening did not disqualify her testimony. We have no reason to believe that the jury did not consider the victim's credibility in light of her admission. But the witnesses to the struggle and the medical condition of the victim bolstered the victim's testimony, and conflicted with Sims's contention that he only bumped the victim's head with a tire iron while disarming her. Second, the jury was entitled to weigh Sims's credibility, including his initial denial of involvement. Under these circumstances, we cannot conclude that the jury lost its way and created a manifest miscarriage of justice by believing the victim rather than Sims.
Therefore, the judgment of the trial court is affirmed, and a certified copy of this Judgment Entry shall constitute the mandate to be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Doan, P.J., Hildebrandt and Painter, JJ.
[1] See R.C. 2905.01 (A)(4).
[2] See R.C. 2923.02 (A) and (E).
[3] See R.C. 2907.02 (A)(2).
[4] See R.C. 2903.11 (A)(1) and (A)(2).
[5] See State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, paragraph two of the syllabus.
[6] See State v. Clemons (1998), 82 Ohio St.3d 438, 444, 696 N.E.2d 1009,1016, certiorari denied (1998), 525 U.S. 1077, 119 S.Ct. 816.
[7] See State v. Thompkins, supra, at 387, 678 N.E.2d at 546.
[8] Id. at 387, 678 N.E.2d at 547, quoting State v. Martin (1983),20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720-721.